Mr. Ostfeld, you may proceed. Thank you, Your Honor. Greg Ostfeld with the counsel's table as Monica Call. We represent defendant Dickey's Barbecue Restaurants, Inc. My aspirational goal is to reserve three minutes for rebuttal. May it please the court, despite a complex, and I might even concede an overly complex, procedural history in this case, I think this appeal actually comes down to a fairly narrow and straightforward point of decision. And I would respectfully submit that this case should end really where it began, and I would refer the court to the November 18, 2016 letter that plaintiff's counsel sent to Dickey's announcing plaintiff's claims in the case. And this is found at page 249 of the appendix, though I will read the relevant language. This is from the first paragraph of that letter, the second sentence, where plaintiffs wrote, we have been retained to represent the Campbells with respect to claims they have against Dickey's Barbecue Restaurants, Inc., related to and arising out of the franchise agreement and development agreement and the franchise or franchisee relationship between Dickey's and Campbell's. Now, what is immediately apparent from that language is how closely it tracks the arbitration clauses of the two cited agreements. But we don't have a franchise agreement, do we? We do have a franchise agreement. We actually have two franchise agreements, Your Honor. And plaintiff's claims on their face, they were asserting a claim, and this letter noted the 2014 agreement, the one we've referred to as the Ogden Franchise Agreement. So from the outset, they were announcing claims under two written agreements. A development agreement and a 2014 franchise agreement, both of which contain an arbitration clause. And the arbitration clause in each agreement covered all claims, disputes, controversies, and claims arising from or relating to that agreement or were the relationship created by the agreement. And that agreement was specifically fixed on Ogden. That agreement was fixed on Ogden, which is why there was a point of disagreement between the parties as to which of the two written franchise agreements governed. But our dispute involves South Jordan. The dispute involves South Jordan. And at least for purposes of the claim that plaintiffs were stating in their opening letter and then in their opening complaint in paragraphs 10. The letter, I mean, I don't understand why you're giving so much importance to the letter. The complaint is the granite of the document. Yes, Your Honor. And the complaint talks about South Jordan. The complaint, yes, Your Honor. But the complaint still invokes this same agreement, the same 2014 agreement. And they assert a breach, they assert claims for rescission of the development agreement and the 2014 franchise agreement. And then they assert claims for breach of the development agreement and the 2014 franchise agreement. The procedure of this is fascinating. Each side has argued contrary to what you're now arguing. I mean, I was trying to assert judicial estoppel or something. But you're both out of luck. I mean, this is the craziest case that I've ever seen. And Your Honor, I'll admit it's one of the oddest procedural postures I've walked into. But I actually think that's how it became overcomplicated. I think the district court, understandably, became sidetracked by the fact that the parties disagreed as to which of two written franchise agreements governed the parties' franchise relationship. Each of those written franchise agreements notably contained an arbitration clause under which the claims asserted would have been referable to arbitration under the terms of the written franchise agreement. And plaintiffs in their moving papers below still stuck to their position that the 2014 agreement and the development agreement were the operative agreements. And really, there's a further complication, which is that we moved under both Section 3 and Section 4 of the Federal Arbitration Act. And in light of this court's ruling in Ansari, which unfortunately had not come to our attention at the time, we really should have only moved under Section 3 of the Federal Arbitration Act. Because I think this court made clear in Ansari the determination as to the enforceability of the arbitration clause, whether to compel arbitration, belongs to the district court where the arbitration belongs. So it belongs to the district court in Texas. And to be clear, in light of our understanding of the Ansari case, and especially in light of the Supreme Court's ruling in Schein, which we think closed the door permanently on any judicial exceptions, Ansari had at least recognized the possibility of a waiver of the forum selection clause. We would respectfully submit that since Schein said there won't be any more judicial exceptions, that closed the door on that. So at this point in our appeal, we are not seeking Section 4 relief. We are only seeking a remand for the purpose of imposing Section 3 relief. And that does have implications for what the district court should have done below, and what this court should do on appeal. Where did the district court below go wrong, then? Where the district court below went wrong is it went below, or went past the face of the motion papers. Really, it could have just taken plaintiff's claims on their face. It could have said, under the claims as you've asserted them, under the claims as you've asserted them in your complaint, in your motion papers, and in the termination letter, you have asserted claims that are on their face, referable to arbitration, under an agreement in writing that covers those claims. My responsibility at this point is to stay the case under Section 3. If there are disputes as to the threshold arbitrability issue, if there are disputes as to which of these two written agreements, either one of which would give rise to a stay governs, guess what? I don't have to deal with that. That's the problem with the district court. But didn't he go searching for the South Jordan Franchise Agreement and not finding that said, and it's a mystery to me why there's not a South Jordan Franchise Agreement, maybe you can tell me that also, but not finding the agreement, and therefore no arbitration clause, he took the path of least resistance. Well, and to be clear, Your Honor, our position has never changed. We still see the South Jordan Franchise Agreement as the governing agreement, and I'll walk you through my analysis on that. But even without that, I actually think that that was a sidetrack for the district court, because what it was presented with, at least up until oral argument below, was two sides, each of whom was arguing that their claims were subject to a written franchise agreement. That written franchise agreement, in both instances, contained an arbitration clause under which the claims asserted would have been referable to arbitration. So under Section 3, the district court should have ended it there. But Campbell never signed the South Jordan. Campbell did not sign the South Jordan Franchise Agreement. So then you've got the problem of trying to assert arbitration against the party that never signed the document calling for arbitration. Well, Your Honor, the party, it only has to be an agreement in writing. It doesn't have to be the party against whom it's asserted who signed it, and that's You think you can assert arbitration against somebody who had never signed an arbitration agreement? You can assert an agreement in arbitration against a party who assumed another party's written arbitration agreement. But they didn't assume it. There is no assumption clause. There's no transfer of assumption or anything. In fact, their contract negotiation specifically said, we're not assuming it. I respectfully disagree, Your Honor. I believe the record is suffused with evidence showing that there was an assumption of the 2011 South Jordan Franchise Agreement. Do you mean the record sites that are best for you on that? Yes, Your Honor. The record sites that are best for us, I would point to two provisions of the Asset Purchase Agreement that was signed between the plaintiffs and the former franchisee of the South Jordan Franchise Agreement. Section 1.03, under which plaintiffs assumed the expenses, liabilities, and operation of the restaurant, that's at page 100 of the appendix. That's of the restaurant? Yes, Your Honor. Well, and that's different than the franchise. So I'm not persuaded by that. So give me your second one. The second one, Your Honor, and I think this is the better one, is Section 3. You probably should have started with this one. I'm trying to go sequentially through the contract, Your Honor. I think better is to go with the best one first. Will do, Your Honor. Under Section 3.02e of the Asset Purchase Agreement, the plaintiffs undertook sole responsibility to obtain franchise approval and agreed to undertake all continuing obligations of the franchise. And I think that's the key provision. Who undertook that? You said plaintiffs. The plaintiffs. The Campbells undertook that, Your Honor. You didn't say plaintiffs in the agreement. No, it's the Campbells, Your Honor. Give me the language of the agreement, not your post-Hawking interpretation. It says what? So, Your Honor, what the agreement says under Section 3.02e of the Asset Purchase Agreement, it states, purchaser acknowledges that it shall be solely responsible for obtaining franchise approval from Dickey's Barbecue Pit Franchise and for meeting all continuing obligations of the same. Yeah, well, that isn't an assumption. Basically, that is an un-assumption. What that is basically saying is, Dickey, you're not responsible for this. I respectfully disagree, Your Honor, because the South Jordan Franchise Agreement actually had in its terms a provision that contemplated how this could be undertaken without entering into a new franchise agreement. Couldn't all of this have been avoided simply by Dickey's having had the Campbells sign a new franchise agreement? It could have been, but that was their option, Your Honor, under the South Jordan Franchise Agreement. But here you are, and you're saying this all could have been avoided, and we're going through these tangles and gymnastics. Why should we rule in favor of doing it all again next year? Why shouldn't we just say, if you want to have a franchise agreement with someone in this situation, sign a new franchise agreement? Well, Your Honor, looking back retroactively, it is certainly, we can see that there would have been a different way to handle this. But it's not the way that Dickey's chose to manage its business. You don't necessarily enter into a contract with a contemplation that there will one day be a dispute over the franchise clause. Under Article 15.2 of the South Jordan Franchise Agreement, Dickey's was permitted to give its prior written consent to a new franchisee to take over the old franchise agreement, and the decision to require a new franchise agreement was at Dickey's option. Here, Dickey's elected not to exercise that option. It elected to allow plaintiffs to proceed under the old franchise agreement. And plaintiffs acknowledged they did. At least they did up until the oral argument on this motion below. They acknowledged that through their course of conduct from September 2014 to November 2016, they operated the franchise. They paid royalty fees in accordance with the terms of the written franchise agreement. And it's also in the record that in June of 2015 and July of 2015, they received notices of noncompliance from Dickey's that specifically referenced the 2011 franchise agreement as the operative agreement, and they didn't dispute that that was the operative agreement. So your argument is hinged on that the party's conduct as a matter of law amounted to an acceptance of the old franchise agreement. That's not what my argument hinges on, Your Honor. I would argue that there was a written assumption of the agreement as evidenced by the asset purchase agreement, and that the course of conduct confirms the reality that they did, in fact, assume the prior written franchise agreement. But for purposes of the dispute before this court... So you're not arguing that there was an assumption of the franchise agreement through course of conduct. You're saying course of conduct is only evidence of a written assumption of the franchise agreement. I think course of conduct confirms the written evidence. You're not arguing a kind of an estoppel argument that they are stopped from denying it because of their course of conduct. You're arguing strictly a legal issue of how we should interpret the agreement between Dickey's and the Thompson agreement. Well, we never reached that point below because there was never an evidentiary hearing. And the argument that I'm making today is that that evidentiary hearing belongs to the Texas District Court. What the court below should have done is looked at the parties' respective stances, said under each party's position, there is a written franchise agreement under which this dispute is referable to arbitration. So my role under Ansari is to stay this case and then allow the Eastern District of Texas to untangle the dispute. What is left for us in light of the Texas ruling? I think what is left for this court is to remand it for a stay and to allow the Texas court to then continue down its path. The Texas court has now sent our claims. But the Texas court went all out by saying, look, I'm not deciding anything that's pending in the 10th Circuit case. Exactly, Your Honor. The Texas court sent our claims to arbitration and said I'm not deciding anything relating to what's going on in Utah. So you're telling us now, to the contrary, that the Texas thing is deciding and is dispositive. I'm not. What I'm saying is if Your Honor's remanded this with an instruction to stay, then this issue will then go to the Texas court to decide the arbitrability of this dispute. I see that I don't know about a minute and a half. If I may, I would like to reserve that. All right. Good morning, Your Honors. Greg Roberts on behalf of the Appellant's Campbell's or the Appellee's, I'm sorry, Campbell's. And I've got Greg Savage with me at counsel table. Just to briefly back up, you were absolutely right about the fact that both parties have seemed to kind of flip-flop on their positions. And the reason being, in defense of our position, the only agreements that Dickey's ever sent my clients were in fact the Ogden Agreement and the Development Agreement. And so that's what we thought governed. And when they made clear in the hearing that those aren't the agreements, and in fact in their motion to compel, they only attached the South Jordan Agreement, when they made that clear, we conceded that we had made that unilateral mistake. That in fact, that the Ogden Agreement... Aren't they the same? Aren't they more or less the same? They're not. The verbiage is very much the same, but the Ogden Agreement only governs the operation of the Ogden Franchise, which never occurred. The Development Agreement has different verbiage, but the Development Agreement only governs when we develop. There are some differences in the Arbitration Clause, too. I can't remember what it was, but some difference about burden or standard or something. So they are, in the Development Agreement and in the Franchise Agreement, they're in different sections. Both of the agreements, they'll have this, and this I think is a key point, both of the agreements are not exclusive with respect to arbitration. Both of the agreements allow Dickies to decide whether they want to arbitrate it or whether they want to bring a civil action. And so that is an important part when it comes to the gateways of arbitrability. It's clear that their agreement does not provide that the arbitrator decides the arbitrability of the issue. But it only puts that discretion on Dickies, not on Campbell. Fair enough, yeah, that's absolutely true. But the fact that the case law all states that if you're going, if the parties are going to allow an arbitrator to decide the gateway issues of arbitrability, that has to plainly state that in the agreement, and this agreement does not, by allowing both, allowing Dickies to either decide they want to bring an arbitration or to decide they want to bring a civil action. I just didn't understand that. So the fact that the case law states that in order for the issue of arbitrability to be given to the arbitrator, the agreement has to specifically state that. Here, the agreement doesn't give the arbitrator the exclusive right to decide the issues of arbitrability. It allows Dickies to decide whether they want to bring an arbitration or they want to bring a civil action.  but what case says that? It is. So the case law states so it would be the I believe it's Schein, Your Honor. Let me make sure I'm right on that. In Schein, the Schein case, it states, and to back up, it says to be sure before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. And that's where we're at because we don't believe a valid arbitration agreement exists. But then it goes on to state but if a valid arbitration agreement exists and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrable issue. So it's that and if it delegates the issue of arbitrability to the arbitrator. And here it doesn't because the agreement plainly allows Dickies to decide whether they want to bring a case either in arbitration or in court. Your clients are operating this franchise without a franchise agreement and if there are other breaches of what I would expect to be in the franchise agreement like the monthly franchise payment or obligations on cleanliness and quality of the restaurant that would undercut the franchise's viability, you're saying no dispute under anything you're having to do with South Jordan would be subject to arbitration. Correct. And here's the reason and here's the important part, Your Honor. And I take some exception to the fact that Dickies has maintained that their position has always been the same. It hasn't. And in fact, they specifically told Judge Benson that the development agreement didn't apply. And then they went to a text when they didn't like the Judge Benson and it's an improper attempt to do an end run around Judge Benson's ruling. And in fact, the Texas court found that they displayed a considerable lack of candor for not mentioning the Utah action. But where it really comes down, Your Honor, is this is the important point which is under the Federal Arbitration Act you need to show two things in order to have arbitration. You need to show a written agreement and they've tried to now say that the U.S. court accepted the development agreement as getting them there, right? Yes, sure enough. And they said, and Judge Ebel was correct in that they said you could bring any claims that rise under the development agreement but you can't bring any claims in arbitration that arise under the South Jordan franchise agreement or any claims that were in the Utah action. But with respect, the Ogden agreement simply doesn't apply to South Jordan and they're going to lose on the merits, right? What I think they're going to try and do is try and shoehorn claims under the development agreement but the development agreement couldn't have been more clear that the development agreement only Well, the magistrate judge in that order seemed to accept that representation, didn't he? Yes, I would agree with that but the development agreement only allows for development but more importantly this is what it specifically says it says this agreement is not a franchise agreement and does not grant to you any right or franchise to operate a restaurant and all the claims at issue involve the operation of the South Jordan franchise and so I think they're going to try and shoehorn those claims into the development agreement but the arbitration the arbitrator if they follow that language is likely to rule against them Yeah, we would hope that an arbitrator would rule against them on respect to the development agreement But that's the only agreement submitted to the arbitrator, right? Yes, well, yes and no in the arbitration they tried to plead both so in the arbitration they tried to plead both claims under the development agreement They referred that second matter to the arbitrator, didn't they? That's correct, we would agree with that assessment Have the Campbells ever alleged that Dickies has waived the development agreement on this appeal? Yes, we did. In fact, we did argue that In fact, in our pleadings we stated that because they specifically stated to Judge Benson the development agreement has no bearing in this matter we've argued that they have waived it In fact, in our pleadings we did not claim the development agreement in front of this court's attention and we believe that they have waived that right because they had a chance to preserve it Now, to be fair we took a run at that with the Texas court and the Texas court said it wasn't enough for a waiver What was raised in front of Judge Benson was not enough for a waiver But then, just to back up to this idea that under the Federal Arbitration Act you need a written agreement either where they're saying it's the development agreement or the argument franchise agreement or they're saying that we assume the South Jordan franchise agreement But more than what you need another problem, which is you need a written agreement and this is Section 2 of the Federal Arbitration Act and an agreement writing to submit an arbitration an existing controversy arising out of such contract It is undisputed Now, with respect to the assumption we agree with Judge Ebel that actually that the assumption agreement makes clear it's actually an unassumption because what they are saying what the prior owners are saying is, hey, Campbell's it's your responsibility to go get approved as a Dickey's franchiser or franchisee And there is no, according to you there is no South Jordan franchise agreement There is not Well, why would your client run a Dickey's franchise without a franchise agreement Because they wrongfully assumed that there was a franchise agreement They wrongfully assumed that the Ogden franchise agreement was the agreement Because that's the only agreement that we were ever sent And it's important to note that with respect to our complaint they want to keep referring to the original complaint We amended our complaint in violation of the Business Opportunity Disclosure Act that we think voids the agreements anyway But we believe we only have an oral agreement But what they are trying to do is somehow say What are the terms and conditions of the oral agreement That probably the course of conduct would have to ferret those out Should we send this back for an evidentiary hearing on that So, to be clear all we are at is a motion to dismiss I'm sorry, a motion to compel under Ansari And now we are just seeking to stay the claims And just briefly on the stay of the claims It would be wholly improper to stay the claims Because the only claims that are in the district court are our claims And our claims don't arise under the development agreement Our claims arise under the franchise relationship with respect to the operation of the South Jordan restaurant So you can't stay our claims outside of any of the written agreements that they provided What legal basis if you are not relying on any agreement Why does Dickey's have any responsibility at all We are relying on an oral agreement with respect to the operation of the franchise And just to say What's the breach that you are Some of the breaches are that they negligee misrepresented some things about the franchise that enticed us Why wouldn't that relate back to the asset development agreement I'm sorry Why wouldn't that theory relate back to and be covered by the asset Well those would be claims against the prior owner but the claims against Dickey's are actual representations that Dickey's made to our clients with respect to the franchise and performance of the franchise But back to the point of whether or not the South Jordan franchise agreement could govern Again you need a writing and they say well you don't need to have it signed and it could be orally modified You don't need to have a signed written agreement we would agree with that if that agreement was expressly given to the parties at issue and they assented to it There's no dispute that the agreement at issue would modify agreements but now this agreement the South Jordan franchise agreement specifically was personal to the prior owners and it specifically had an integration clause saying it could not be amended absent a writing and it was unassignable without authorization without express authorization from Dickey's We don't have any of that Now they say you can orally modify even an integrated agreement but the arbitration the federal arbitration act specifically requires it to be in writing and in fact your honor this is my first time ever being part of the 10th circuit so I don't know if this is proper I brought some case I don't know if I can approach and give you the cases Just give us the site and we'll hand it We have great clerks The case I want to cite is the Utah Supreme Court case and in that case there was talk about could you orally modify the arbitration and arbitration provision and the Utah Supreme Court says and because the authority of the arbitration itself it follows that the scope of an agreement to arbitrate cannot be modified except by proper concurrence of the parties in the arbitration and then it says the court of appeals concluded that a written arbitration agreement may be implicitly modified merely by the parties actions in bringing evidence of matters outside the scope of the agreement We disagree It goes on to say that where the statute and our case law have held that arbitration agreements must be in writing the preference for the explicit expression of the intent and the parties regarding the scope of the arbitration is well established to allow modification of an express written agreement by less than a similar explicit intent would simply circumvent the statutory requirements and the policies they vindicate in this case No express written agreement to modify the scope has been alleged let alone proven So they want to somehow say that it's been orally modified that covers the claims there is no such agreement here and because there is no such agreement There is an agreement it just isn't one that's been made a burden on your client There is an agreement with the prior owners of the South Jordan Frenches but for them to now add us to that they would have to be amending the scope of that agreement and that would be improper because they're wanting to add us to that agreement again that we never saw that wasn't given to us what they gave to us was an argument franchise agreement and the development agreement In this case if it goes to trial would be the scope in terms of an oral agreement is that what it would boil down to Yes absolutely that would be one of the issues for trial Thank you counsel Thank you I think where I'd like to begin is with the contention that plaintiff's claims are limited exclusively to the oral South Jordan franchise agreement Even if you look at plaintiff's amended complaint which is included in their request for judicial admission that's not correct They are still asserting claims for rescission of the written development agreement They are still asserting a claim for breach of the development agreement So even under plaintiff's amended complaint they are still asserting claims Again under section 3 of the Federal Arbitration Act that's the end game there That has to be stayed It has to go to the Eastern District of Texas to decide any threshold arbitrability issues I also respectfully disagree with plaintiff's characterization of our argument He states that we told Judge Benson that the development agreement didn't apply That's not correct What we said is the development agreement isn't a franchise agreement We've never argued that the development agreement doesn't apply And in fact in Texas we've asserted our claims under the development agreement due to their failure to develop and operate franchises as contemplated by the development agreement That created the relationship between the parties and under the development agreement's arbitration clause any claims arising under the relationship created by the agreement are also arbitrable Thank you If you have any questions you can reach out to me with mental authority in the 10th Circuit Rules and you can submit your case through that process Look under Rule 26